UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PAUL RAMARO CHURCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-CV-36-HBG |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16].

Now before the Court is Plaintiff's Amended Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 27 & 28] and Defendant's Amended Motion for Summary Judgment and Memorandum in Support [Docs. 30 & 31]. Paul R. Church ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

### I.  PROCEDURAL HISTORY

On August 11, 2014, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on April 10, 2012. [Tr. 10, 58–59]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 87]. A hearing was held on February 7, 2017. [Tr. 24–37]. On May 31, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 10–19]. The Appeals Council denied Plaintiff's request for review on February 27, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on March 16, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. Plaintiff filed his first Motion for Judgment on the Pleadings [Doc. 17] on June 26, 2018, to which the Commissioner responded through his Motion for Summary Judgment on September 7, 2018 [Doc. 21]. However, the parties subsequently filed a Joint Motion to Extend Period for Responsive Briefing [Doc. 25] due to the submission of a Supplemental Transcript [Doc. 24]. The Court granted the joint motion on September 12, 2018 [Doc. 26]. Plaintiff filed his Amended Motion for Judgment on the Pleadings [Doc. 27] on September 28, 2018, and the Commissioner filed his Amended Motion for Summary Judgment [Doc. 30] on October 23, 2018. This case was subsequently reassigned to the undersigned on May 3, 2019. [Doc. 32]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since April 10, 2012, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

6. The claimant is capable of performing past relevant work as a warehouse worker tow motor operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 10, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 13–19].

### III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

4

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in two regards. First, Plaintiff contends that RFC determination is not supported by substantial

evidence, as the opinion of Robert Blaine, M.D.—the only physician who examined or treated Plaintiff—did not support a finding that Plaintiff could perform medium work. [Doc. 28 at 4–6]. Further, Plaintiff claims that the ALJ failed to properly consider his depression, which was diagnosed in records obtained after the disability hearing. [*Id.* at 6–7]. Lastly, Plaintiff claims that the ALJ failed to ensure that he received a full and fair hearing, as Plaintiff alleges that he did not make a knowing and intelligent waiver of his right to counsel at the hearing. [*Id.* at 7–8]. The Court will address Plaintiff's specific allegations of error in turn.

    A.    **ALJ's RFC Determination**

Plaintiff alleges that the ALJ improperly found that he could perform a full range of medium work, and thus, the ALJ's finding that Plaintiff could return to his past relevant work is not supported by substantial evidence. [Doc. 28 at 6]. Plaintiff contends that there is no substantial evidence to support the RFC determination, as it is not consistent with any medical opinion. [*Id.*]. The Commissioner maintains that the ALJ properly evaluated the medical evidence in determining Plaintiff's RFC, and relied upon the VE's testimony to support his conclusion that Plaintiff could return to his past relevant work. [Doc. 31 at 12–13].

A claimant's RFC is the most that claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). "[W]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot

substitute his or her own lay medical opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (internal quotation marks and brackets omitted).

Here, the ALJ found that Plaintiff had the RFC to perform a full range of medium work. [Tr. 14]. Plaintiff contends, however, that there was no substantial evidence to make this finding, as it was inconsistent with Dr. Blaine's opinion. Additionally, Plaintiff claims that the RFC determination is not supported by substantial evidence because the ALJ assigned little weight to both Dr. Blaine's opinion and the opinions of the nonexamining state agency consultants.

Dr. Blaine consultatively examined Plaintiff on September 30, 2014, and noted Plaintiff's allegations of back, shoulder, and stomach pain. [Tr. 265]. Dr. Blaine noted that Plaintiff alleged the onset of low back pain twenty-five years ago, but has done heavy lifting. [*Id.*]. Additionally, the ALJ reported that while Plaintiff was diagnosed with bulging discs in the past, he had not had any recent imaging or treatment. [*Id.*]. On examination, Plaintiff's flexion of the cervical spine and extension was normal, while Plaintiff's lateral rotation was 60 degrees bilaterally, and lateral flexion was 30 degrees bilaterally. [Tr. 266]. Plaintiff exhibited negative straight leg raises bilaterally, his deep tendon reflexes could not be elicited in the upper extremities except for 1/4 right biceps reflex, his knee jerks were 2/4 bilaterally, and ankle jerks were 0/4 bilaterally. [Tr. 267]. Lastly, Plaintiff's station, gait, tandem walk, heel and toe walk, single-leg stand, and squatting were all normal. [*Id.*].

Dr. Blaine diagnosed low back pain secondary to disc disease, right shoulder pain, and history of a stab wound to the groin with a vascular injury. [Tr. 267]. Accordingly, Dr. Blaine opined that Plaintiff could stand or walk for six hours in an eight-hour day with reasonable rest breaks, that Plaintiff could lift and carry ten pounds frequently and thirty to forty pounds

7

infrequently, and that Plaintiff could sit for eight hours with reasonable rest breaks. [*Id.*].

In the disability decision, the ALJ assigned little weight to Dr. Blaine's opinion, while noting that Dr. Blaine opined lifting and carrying limitations consistent with light work. [Tr. 18]. However, the ALJ found that the opinion was entitled to little weight because it was based upon a one-time examination, and "subsequent treatment records showing benign exams do not support limitations to light work." [Tr. 18].

In *Baker v. Berryhill*, another court within this District recently summarized the relevant case law regarding "when there is one medical opinion that is at least partially rejected by the ALJ," stating that:

> Does the ALJ impermissibly "play doctor" when he formulates an RFC that is not supported by the expert medical opinion? Some district courts have held that "the ALJ 'must generally obtain a medical expert opinion' when formulating the RFC unless the 'medical evidence shows relatively little physical impairment' such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]" *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017). Some have required an RFC determination to be supported by a medical opinion. *See, e.g.*, *Wyatt v. Comm'r of Soc. Sec.*, No. 12-11406, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2013) ("ALJ RFC determinations must be supported by medical opinions."). Those cases seem to reflect the consensus that ALJs are not qualified to translate or interpret raw medical data, such as MRIs, or other diagnostic tests, in reaching a RFC assessment.

No. 2:17-CV-175-MCLC, 2019 WL 1560538, at *3 (E.D. Tenn. Feb. 13, 2019). Additionally, in *Rudd v. Commissioner of Social Security*, the Sixth Circuit found that an ALJ "was not required to base her [RFC] determination on a medical opinion" where the plaintiff alleged that the RFC was not supported by substantial evidence because no physician opined that Plaintiff could perform the standing and walking requirements of light work. 531 F. App'x at 727–28.

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259,

2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined [the] RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (internal citations omitted).

The ALJ's finding that Plaintiff could perform the full requirements of medium work was within his "zone of choice," despite affording little weight to the opinion of the sole examining physician. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted). First, as Dr. Blaine was not Plaintiff's treating physician, his opinion was not entitled to controlling weight, and the ALJ was not required to provide good reasons for the weight assigned to the opinion. While the ALJ is required to consider all medical opinions in the record, the ALJ, however, is not required to give "good reasons" for the weight given to the opinions of non-treating examining sources or non-examining sources. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only *treating* sources.").

The ALJ properly found that Dr. Blaine's opinion was not consistent with subsequent treatment records, citing to records from East Tennessee State University College of Nursing and

9

Johnson City Community Health Center which occurred after Dr. Blaine's opinion. [Tr. 18]. The ALJ previously summarized these medical records by stating that there was "no indication of limited range of motion of the back or gait abnormality by treating source exams through July 13, 2016," and such "[e]xams routinely show normal extremities and normal neurological functioning." [Tr. 15]; *see* [Tr. 298–400]. Further, the ALJ noted that these treatment records after Dr. Blaine's examination "reflect complaints of back pain on only a few occasions," Plaintiff didn't require narcotic pain medication, his pain and symptoms were conservatively treated, and his allegations of back and shoulder pain did not warrant "diagnostic testing and[/]or referral to an orthopedist, neurologist, or pain specialist." [*Id.*]. Therefore, the ALJ properly explained his reasoning for assigning little weight to Dr. Blaine's opinion, noting that its findings were inconsistent with Plaintiff's treatment records. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

The Court also notes that while the ALJ assigned little weight to both Dr. Blaine's opinion and the opinions of the nonexamining state agency consultants, the ALJ's ultimate RFC determination was within the range of limitations assessed in the respective opinions. The Commissioner correctly states that while Dr. Blaine opined more restrictive limitations than those in the ALJ's RFC determination, the nonexamining state agency consultants opined that Plaintiff had no severe impairments. The ALJ assigned little weight to these opinions, as they had not reviewed evidence of chronic pain syndrome and degenerative disc disease. [Tr. 18].

Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ assessed that Plaintiff was limited to lifting and carrying no more than fifty pounds occasionally and twenty-five pounds frequently. [Tr. 16]. The ALJ noted that there was no objective evidence of treatment for shoulder injuries, and thus, there were no severe impairments of the upper extremities. [*Id.*]. With respect to Plaintiff's back pain, the ALJ summarized the medical evidence to find that "the evidence shows [Plaintiff] has good range of motion of his back, hips, and lower extremities." [Tr. 15]. The ALJ was not required to adopt Dr. Blaine's opinion, despite it being the only medical opinion of record from a treating or examining source. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). Further, the ALJ did not "translate or interpret raw medical data, such as MRIs, or other diagnostic tests, in reaching a RFC assessment." *See, e.g.*, *Baker v. Berryhill*, No. 2:17-CV-175-MCLC, 2019 WL 1560538, at *3 (E.D. Tenn. Feb. 13, 2019). Plaintiff's allegations of error with respect to the RFC determination therefore do not constitute a basis for remand.

### B. Plaintiff's Waiver of Right to Counsel

Plaintiff contends that the record reflects that he did not make a knowing and intelligent waiver of his right to counsel at the disability hearing, and was subsequently prejudiced by this lack of counsel. [Doc. 28 at 7]. Plaintiff submits that "the superficial questioning . . . at his hearing and the failure to inquire regarding [ ] Plaintiff's depression all show that [he] was deprived of a full and fair hearing." [*Id.* at 8]. The Commissioner maintains that the ALJ properly questioned whether Plaintiff wished to proceed without an attorney, and ensured that Plaintiff received a full and fair hearing. [Doc. 31 at 20].

Here, the supplemental transcript establishes that Plaintiff's previous attorney, D. Stephen Duncan, informed the SSA that he had withdrawn as Plaintiff's representative on July 21, 2016.

[Tr. 411]. The SSA informed Plaintiff on November 4, 2016 that his previous counsel would not represent him at the upcoming hearing, as well as stated that Plaintiff could still choose to be represented by a lawyer or another representative, and provided information on groups that could help him find a representative. [Tr. 405–10]. Plaintiff's hearing was then held on February 7, 2017. [Tr. 25].

During the disability hearing, the ALJ started the hearing by noting that Plaintiff's attorney was not present, and questioned Plaintiff about his desire to proceed, stating in relevant part:

| | |
|---|---|
| ALJ: | Mr. Church, evidently you had an attorney and the attorney is not here. Do you want an opportunity to get an attorney? |
| Plaintiff: | Not really. |
| ALJ: | Okay. An attorney - - if there - - if there's anything out there to be gotten sometimes they're good to have. Because the problem with the file that I have is there's not any medical.[2] |
| . . . | |
| ALJ: | I - - first thing - - |
| Plaintiff: | And - - |
| ALJ: | - - we've got to do is decide, do you want to proceed with this hearing? Or do you want an opportunity to obtain an attorney or a representative? |
| Plaintiff: | I just - - |
| ALJ: | So that they can help you - - |
| Witness[3]: | Getting your medical. |

---

[2] At the disability hearing, only 48 pages of medical records had been submitted, along with the consultative examination produced by Dr. Blaine. [Tr. 218–69]. Following the hearing, the ALJ assisted Plaintiff in adding an additional 132 pages to the medical record. [Tr. 269–400].

[3] Plaintiff's stepdaughter testified as a witness during the disability hearing. [Tr. 35]. The ALJ noted that she was at the hearing to assist Plaintiff because he was illiterate. [Tr. 28].

| | | |
|---|---|---|
| | | . . . |
| ALJ: | | The - - what an attorney can do for you, if there's anything out there, he can try to get that. If there's nothing out there then attorneys are attorneys, they're not magicians. So, you can decide what you want to do. Do you want to proceed now, or do you want to talk to an attorney? |
| Plaintiff: | | I would just go on with it. |
| ALJ: | | Proceed? Okay. We'll do that. |

[Tr. 27–29].

"When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed." *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (citing *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983)). "This heightened duty arises from the remedial nature of the Social Security Act, as well as from the recognition that the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Brewer v. Comm'r of Soc. Sec.*, Case No. 5:16-cv-137, 2016 WL 7634431, at *10 (N.D. Ohio Dec. 12, 2016), *report & recommendation adopted by*, 2017 WL 27260 (N.D. Ohio June 3, 2017).

In order to fulfill this duty, an ALJ "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and "be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052. However, the "mere fact that a claimant was unrepresented is not grounds for reversal. Rather, [the district court is to] examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing." *Duncan*, 801 F.2d at 856 (internal citation omitted).

13

First, Plaintiff has failed to demonstrate how his waiver of the right to counsel at his hearing was not knowing or voluntary. "The Sixth Circuit made clear in Duncan that when a plaintiff is notified of her right to counsel in writing prior to the administrative hearing, and the ALJ's clarifies waiver of that right before proceeding with the hearing, the ALJ has satisfied her duty in advising a plaintiff of her right to representation." *Atwood v. Comm'r of Soc. Sec.*, No. 1:13-CV-00703, 2014 WL 1794580, at *4 (N.D. Ohio May 6, 2014) (citing *Duncan*, 801 F.2d at 856).

Plaintiff merely states that he "did not make a knowing and intelligent waiver of his right to counsel at his hearing." [Doc. 28 at 7]. However, Plaintiff fails to allege any facts that resulted in his desire to proceed with the hearing being invalid. Initially, the SSA sent Plaintiff notice that his attorney had withdrawn and provided resources regarding obtaining an attorney. During the hearing, the ALJ informed Plaintiff that his attorney was not present and about his right to an attorney, as well as that medical records were not submitted in his file. Subsequently, the ALJ questioned Plaintiff twice regarding whether he wished to proceed without an attorney. Although Plaintiff was illiterate, his stepdaughter appeared with him at the hearing and later testified regarding his symptoms. Following the hearing, the ALJ assisted Plaintiff in obtaining his medical records. Therefore, Plaintiff has failed to prove that his desire to proceed with the disability hearing without his attorney was not knowing or intelligently provided. *See, e.g.*, *Ells v. Colvin*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *4 (W.D. Ky. Mar. 27, 2018) ("Although Ells is illiterate, he nonetheless confirmed that he did receive papers about places he could contact to obtain legal representation. Ells, like the claimant in *Duncan*, stated that he wanted to proceed with the hearing that day."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-296, 2012 WL 7009808, at *6 (E.D. Tenn. Nov. 6, 2012) ("But a review of the transcript reveals there is nothing particularly unusual about Plaintiff's responses that would indicate her waiver of her right to counsel was

involuntary or made without knowledge of her rights. Plaintiff simply responded 'yes' to the ALJ's questions, and there was no indication she did not understand the questions being asked. Plaintiff's father was present at the hearing for support, so she did not attend the hearing alone, and it does not appear that she was overly nervous or otherwise unable to testify about her conditions."), *report and recommendation adopted sub nom.* Smith v. Astrue, 2013 WL 474808 (E.D. Tenn. Feb. 7, 2013).

Plaintiff also claims, however, that the ALJ failed to properly consider his depression, "a condition which was apparently diagnosed in records obtained after [ ] Plaintiff's hearing." [Doc. 28 at 7]. Plaintiff submits the ALJ "did not question [ ] Plaintiff regarding his emotional state," despite the fact that his treating practitioner opined that Plaintiff had moderately severe depression and considered a diagnosis of major depressive disorder. [*Id.*]. Although Plaintiff has failed to allege how his waiver of the right to counsel was invalid, he has also failed to establish that he was prejudiced by the lack of counsel at his hearing.

The Commissioner correctly states that nothing during the disability hearing would have reasonably alerted the ALJ about Plaintiff's depression. Plaintiff did not allege that he was disabled in any Disability Report or submitted function report [Tr. 154, 161–67, 182–89], and depression was not mentioned in Dr. Blaine's opinion or the opinions of the nonexamining state agency consultants. A review of the transcript of the disability hearing does not indicate the presence of depression when Plaintiff was asked about his symptoms and the reasons that he was unable to work. Additionally, Plaintiff's stepdaughter did not mention Plaintiff's depression when asked about his symptoms.

Further, the medical records pertaining to Plaintiff's mental health treatment were not submitted prior to the disability hearing. Ultimately, Plaintiff admits that his depression "was

15

apparently diagnosed in records obtained after the [ ] hearing." [Doc. 28 at 6–7]. However, the ALJ subsequently assisted Plaintiff in obtaining these records, and discussed the diagnosis of depression during the disability decision. During the hearing, the ALJ noted the absence of many medical records. [Tr. 27]. After the hearing, the ALJ assisted Plaintiff in obtaining his medical records, and the Commissioner also filed a supplemental transcript pertaining to the withdrawal of Plaintiff's attorney, as well as additional information regarding his mental health treatment. [Tr. 401–15].

A review of the medical record establishes that Plaintiff's depression was first indicated on July 24, 2015 while Plaintiff presented for a preventive examination with the East Tennessee State University College of Nursing. [Tr. 391–94]. In the disability decision, the ALJ considered the four areas of mental functioning known as the "paragraph B" criteria. [Tr. 13]. The ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information—based in part on written function reports indicating that he was able to follow spoken instructions, drive, and that he does not need to be accompanied when going out. [*Id.*]. Next, the ALJ found that Plaintiff had mild limitations in interacting with others, as despite Plaintiff's complaints of moodiness due to pain, his mental status exams did not indicate any abnormality of mood. [*Id.*]. The ALJ also found that Plaintiff had mild limitations in the ability to concentrate, persist, or maintain pace, as well as no limitations in adaption. [Tr. 13–14]. Therefore, the ALJ found that Plaintiff's medically determinable impairments of depression and alcohol abuse did not cause more than minimal limitations in the ability to perform basic mental work activities, and thus were non-severe impairments. [Tr. 14].

When assessing Plaintiff's RFC, the ALJ stated that Plaintiff's treatment records demonstrated that he had a history of depression aggravated by alcohol use. [Tr. 17]; *see* [Tr. 343].

The ALJ noted, however, that Plaintiff's depressive symptoms were conservatively treated and well-managed with medication since they were first prescribed on February 10, 2016. [Tr. 17]; *see* [Tr. 352]. Further, the ALJ reviewed that Plaintiff was not treated by a mental health professional, and he refused counseling and continued to abuse alcohol. [Tr. 17]; *see* [Tr. 324, 331]. Lastly, the ALJ noted that Plaintiff's mental examinations were routinely normal. [Tr. 17].

Therefore, the Court finds that the ALJ properly found that Plaintiff's depression was a medically determinable, but non-severe, impairment. As Plaintiff's medical records regarding his depression were not present before the ALJ, and the ALJ was not alerted to Plaintiff's depression during the disability hearing, he was under no obligation to question Plaintiff about his depression. The ALJ questioned Plaintiff regarding why he stopping working [Tr. 30], about where he went for medical treatment [Tr. 31], his prescriptions [Tr. 32], as well as asked Plaintiff's stepdaughter about his illnesses [Tr. 35].

In the disability decision, the ALJ reviewed the medical record regarding Plaintiff's mental health impairments, and proceeded to assess the limitations stemming from Plaintiff's depression when determining his RFC. Plaintiff does not challenge the ALJ's finding that his depression was not a severe impairment or the limitations assessed in the RFC determination; rather, Plaintiff solely claims that the ALJ improperly failed to question him about his mental impairments. Accordingly, Plaintiff has failed to establish that his waiver of the right to counsel was invalid, and he has also failed to demonstrate that he was prejudiced by his lack of counsel at the disability hearing. Therefore, Plaintiff's allegations of error do not constitute a basis for remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 27**] will be **DENIED**, and the Commissioner's Amended Motion for Summary Judgment [**Doc. 30**] will be

**GRANTED**. The Commissioner's original Motion for Summary Judgment [**Doc. 21**] will be **DENIED as moot**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

        ORDER ACCORDINGLY.

        _____
        United States Magistrate Judge